Judgo Unüeravood,
delivered the opinion of the court.
„ The executors of F. Dye recovered a •judgment against N. Greenwood and his surety, A. Bilbo, and a judgment against said Greenwood and his surety, Claiinch, in July, 18231 In October of the .same year, N. Greenwood recovered a judgment for a considerable sum against the executors of Dye. The judgment against Greenwood and Bilbo was setoff against so much of the judgment in favor of Greenwood. This left a balance still due on Greenwood’s1 judgment, for which, execution was sued, but without success. The executors prosecuted executions upon their judgment against Greenwood and Claunch. To injoin this proceeding, Claunch filed' his bill, charging, that Greenwood had become insolvent, and that he had transferred to him (Claunch,) the benefit of his. judgment against the executors, and that he could make nothing on it by execution, having made an is*'effectual trial, &c. Wherefore, he prayed that the court would, by its decree, set-off the balance due on the judgment in favor of Greenwood, against an equal amount ofthe judgment infavor of the executors, against Greenwood and Claunch.
The executors resisted the set-off upon these grounds:
That they had fully administered the estate which had come to their hands; that, being called on by A. Dye and H. F. Greenwood, who were entitled to two shares of the estate, they refused to pay them, knowing that N. Greenwood had a demand against the estate, until the amount of his claim was ascertained, so that they might retain a sufficient sum to meet it; that *660 with this view, N. Greenwood was applied to, whetr, in reference to the contemplated settlement between Dye and the executors, he directed them to make the settlement, upon the basis that his demand or account would not exceed $200; and in relation to the settlement with H. F. Greenvvood, that he directed them to settle with said H. F. as though he, N. Greenwood, had no claim whatever; that the executors accordingly paid to said A. Dye and 1L F. Greenwood, their full distributable shares, influenced by these declarations of said N. Greenwood; and now,, if they were to suffer the set-off asked for, the executors would be injured, inasmuch as the claim by N. Greenwood, for which judgment had been rendered in bis favor,, amounted to $1,352 besides costs of suit, instead of $200. As, therefore, the executors had settled with and paid Dye and H. F. Greenwood, supposing that N. Greenwood was only entitled to a set-off not exceeding $200, against the debts due by him, they had paid to the distributees, under the will, more than their portions of the estate, if the executors were made accountable by the decree of the court for the whole judgment for $1,352 and the costs. Wherefore, as this was a loss brought upon the-executors by the conduct of N. Greenwood,in whose shoes the complainant stood,- they insisted they should be relieved against it, by beingpermitted to collect the* judgment against N. Greenwood and Claunch.
1)' eii-vs. fully j epresent the interest controverted anil decree against them, conclusive upon the legatees, legatees not necessary parties. Retum o{- no property gives tic‘oroc, set-off,
*660 The circuit court,, however, thought otherwise, and set-off the balance of the judgment in favor of N„ Greenwood, against an equal amount of the judgment against him and Claunch. To reverse this decree, the executors have prosecuted their writ of error.
The first error assigned is, that the proper parlies were not before the court. It appears that the legatees of F. Dye were named as parties in the bill, and it does not appear that they were all brought before the court by the service of process, actual or constructive. If they were necessary parties, the error has been well assigned, and the decree should be reversed. We arc of opinion that it was not necessary to make them parties. The executors fully represented the interests1 involved in the controversy, so far as it related to the question of set-off, and any decree which might be rendered in relation to it, would he binding on the legatees.. *661 if the complainant desired to have a decree over against the legatees, in case the set-off was not allowed, with that view, they would be proper parties; the complainant chose to try the question of set-off, without regard to the legamos, he lin'd a right ío do so, The demand set up by him was against the estate. The debt due by him was to iho executors in their fiduciary character. The complainant’s execution had been returned, in substance, “no property found,” and, therefore, according to the principles recognized in the case of Dickerson vs. Chism’s administrator, &c. IV Monroe, 1, the court had jurisdiction to decree the set-off. If, however, the complainant should fail of success in his litigation with the executors, we do not perceive why he might not then proceed against the heirs and legatees under the provisions of the act of 1819,. 1 Dig. 65*2.
Creditor tel- . lingex’r. to - fifstifbuteo1 ‘-without rcg&rd to my re jease ox>r. nor exoneate ^‘e ej bythelaw, to take bond f1”^fj1<isdisr tribúteos and hold assets in. tuall debts of whi0h he had notice are sai isfie;1,
Although the court might properly have entertained jurisdiction, and decreed the set-off without having (he heirs and legatees before it, still, if the executors have shewn any good reason against the sel-ofij it may be improper to decree it. This brings us to the investígation of the defence relied on by the executors, growing out of the directions given them by N. Greenwood to settle with A. Dye and If. F. Greenwood. It is contended, on the part of the executors, that they paid these legatees, by the direction of N. Greenwood,their full shares of the estate, without retaining the funds necessary to satisfy the claim afterwards reduced to judgment by said Greenwood; and that it would be tolerating a fraud to permit Greenwood's assignee, Claunch, to have the set-off, and thereby prevent the executors from collecting the money necessary for then indemnity, in consequence of the advances made these legatees at Greenwood’s instance. It sufficiently appears from the documents and vouchers exhibited, that if the set-off is allowed, the executors will sustain a loss,runless they can recover the money, or part of paid to A. Dye and II. F. Greenwood. If the money can be recovered from them, then the executors arc no danger. If it cannot be so recovered, owing to their insolvency, then it will follow, that N. Greenwood his assignee, proceeding against them under the act 1819, already referred to, would not be able to make any thing out of them: a nd he, therefore, would sustain *662 a loss, equal to the portiorf of his claim which would fall on them, that is, two sevenths, there being seven legatees. It was the duty of the executors, to take from the legatees bond and security,conditioned tore-fund in case of debts thereafter appearing against the estate. It seems in the case of Dye, they performed this duty, but afterwards released the surety to make him a witness against N. Greenwood, upon the trial of the suit in which he recovered his judgment. From H. F. Greenwood a refunding bond, was taken, but without any surety, at least such is the rational inference from the evidence.
The record does not inform us whether A. Dye and H, F. Greenwood are solvent or insolvent. We have only the declaration of Ewing, one of the executors, that he had paid money which he could' not get back, as the reason why he resists the set-off, and this declaration comes under such circumstances as not to-make it evidence.
It is shewn, however, that A. Dye bad, or was about to remove from the state, and that H. F. Greenwood is dead, and these are sufficient reasons for refusing to send the executors in pursuit of the one and the estate of the other, if N. Greenwood has done any thing in consequence of which, in equitjq he has lost the right to enforce the collection of his judgment, by using all the means sanctioned by law.
The evidence on which it is contended that Greenwood has ^forfeited his right to insist on the set off, is from a single witness, and to the following effect:
“ Ewing, one of the executors, told the witness, that at the time he.was about to settle with H. F. Greenwood, he, Ewing, applied to N. Greenwood for the probable amount of his account against the decedent’s estate, that he might be able to come to a final settlement with H. F. Greenwood, and that N. Greenwood then told him to go on and make the settlement without regard to his account, that it would be small. N. Greenwood admitted to the witness, that he had told Ewing so, but gave as a reason, that he had intended to give his brother Henry his proportion of the account, whatever it might be. The witness further stated, that he was riding in company with Ewing and Greenwood *663 iii Jal}', 1824; they were talking about the controversy between them, when Ewing observed to Greenwood that he had frequently applied to him for a settlement of his accounts; and ^t one of the times when he was about coming to a settlement with A. Dye, and at that time, he had told him to go on and make the settlement with said Dye, that his account would not exceed $200; to which Greenwood then replied, that when he told him that, he had a reference to his store account alone.”
From the receipts in the cause, it appears that the final settlement with A. Dye took place in February, 1822, and that with II. F. Greenwood in April, 1823. Now, do the statements made by N. Greenwood, as detailed by the witness, to Ewing, absolve him, as executor, from a compliance with the duty injoined by law, to hold the assets in his hands until all known debts or demands against the estate are discharged? These different conversations, shew conclusively, that Ewing was well apprised of the fact, thatN. Greenwood had a claim against the estate, but the amount of it was not known. At one time Greenwood said it was small, at another that it did not exceed $200, and with reference to the settlement with II. F. Greenwood, he said, “make it without regard to my account.” We are of opinion, that tins language does not import a surrender of any part of N. Greenwood’s demand, or an abandonment of the right to use any remedy afforded by law for its collection. It was no release. It was no acknowledgment of payment or satisfaction. Nevertheless, if it amount to a fraud on Ewing, Greenwood or his assignee should not be suffered to inflict inj ury by it on the executors. But where is there any fraud? The language does not contain any promise to Ewing, that Greenwood would not enforce all the remedies known to the law in order to secure his demand. It does not appear tliat the parties contemplated entering into a contract to that effect, and that such promise was made by Greenwood in consideration that Ewing would, without further delay, pay A. Dye and II. F. Greenwood their shares of the estate. If such a contract exists, we must arrive at that conclusion by deducing it from the facts, thatN. Greenwood consented that Ewing might settle with H. F. Green-' wood without regard to his account, and with A. Dy.e *664 upon the ground that his account did not exceed $21)0. Wind idea N. Greenwood attached to the word settle _ or settlement, in the concession made to Ewing, cannot be told with precision. Whether he only meant that Ewhurcouklgo on and cast up the accounts, or whether he meant m addition, that he might make payment after cas..mg up the accounts, and that no would sanction and aníde !>y such payments, however prejudicial to his rignts, may admit of doubt. The exp:essioiis aro too loose (and proved, ioo, by the weakest oí ah e/idenoe, party confessions,) to authorize us to infer ■from them, l'v:a there w;c -my settled contract or undent unii lg, based upon a good and valuable consideration, by which N. Greenwood relinquished any of his rig -'s, ei .her as it respects the amount or the remedy a;-uins. 'he executors. We, therefore, perceive nothing m ihe conduct of N. Greenwood which authorized the executors, to depart from the usual course of admlniS'-rationpointed out by law. They must, therefore, setde with the creditors and look to the legatees for indemnity, if they have paid over too much. It would be setting a dangerous precedent, to permit executors to escape their liability to creditors, by relying on the loose declarations of such creditors relative to paying over the estate to distributees. It would have a tendency to destroy and render unavailing,those securiíié'S which the law has provided in the accustomed track of •administration, and it must he a very clear case before we can tolerate it.
There is evidence, proving pretty clearly, that Ewing had notice of N. Greenwood’s account to its full extent, at least that it was much larger than $200, (which Greenwood insisted was about the amount of 'his store account only,) long before he paid ofF ff. F. Greenwood and took his receipt in full. Goodnight deposes, in substance, that Ewingspokeat the time, of the settlement with A. Dye, which look place in February, 1822, of Greenwood’s store amount for $200, and that in a few weeks thereafter he heard him speak of Greenwood’s “ large claim" as being very extravagant. The, final settlement with II. F. Greenwood did not take pláce, as already stated, until April, 1823. Go that, if Goodnight is not greatly mistaken, Ewing *665 •knew enough to put him completely on his guard, and ■should not have relied on any loose statements which N. Greenwood made as to the amount of his accounts»
Owsley and Davis, for appellants; Hardin and Cunningham, for appellee.
We perceive no error in 'the decree. It is, there-ore, affirmed with costs.
Note. — Chief Justite Robertson, did not sit in this case.